INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 571, APPELLEE, v. CITY OF PLATTSMOUTH, APPELLANT.

660 N.W.2d 480

Filed May 2, 2003.   No. S-02-581.

Roger K. Johnson for appellant.

Thomas F. Dowd, of Dowd & Dowd, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

WRIGHT, J.

## NATURE OF CASE

The International Union of Operating Engineers Local 571 (IUOE) filed a petition in the Commission of Industrial Relations (CIR) alleging that the City of Plattsmouth (Plattsmouth) had engaged in a prohibited practice in violation of the Industrial Relations Act (IRA) by failing to bargain in good faith over the effects of the elimination of a city department, which included the layoff of a bargaining unit employee. See Neb. Rev. Stat. § 48-824(1) (Reissue 1998). The CIR ordered Plattsmouth to cease and desist from unilaterally implementing changes in terms and conditions of employment which were mandatory subjects of bargaining, and it ordered the parties to commence good faith

negotiations. The CIR also ordered Plattsmouth to make the laid-off employee whole by compensating him with backpay until one of several conditions, including reinstatement, was met. Plattsmouth appeals.

## SCOPE OF REVIEW

■ Any order or decision of the CIR may be modified, reversed, or set aside by an appellate court on one or more of the following grounds and no other: if the commission acts without or in excess of its powers, if the order was procured by fraud or is contrary to law, if the facts found by the commission do not support the order, and if the order is not supported by a preponderance of the competent evidence on the record considered as a whole. *Crete Ed. Assn. v. Saline Cty. Sch. Dist. No. 76-0002, ante* p. 8, 654 N.W.2d 166 (2002).

■ Statutory interpretation presents a question of law, in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of the decision made by the court below. *Keller v. Tavarone, ante* p. 236, 655 N.W.2d 899 (2003).

## FACTS

In July 2001, the IUOE requested that Plattsmouth voluntarily recognize it as the bargaining representative for certain Plattsmouth employees working in four departments, including the Parks Department and the Street Department. On August 20, the Plattsmouth City Council voluntarily recognized the IUOE as the employees' collective bargaining representative. At a special meeting held on September 24, Plattsmouth eliminated its Parks Department and transferred the department's function to the newly created Street and Property Maintenance Department. In doing so, Plattsmouth laid off Randy Winters, who had been an employee of the Parks Department. The IUOE was Winters' recognized collective bargaining representative, and the layoff was completed without any bargaining over the effects of the reorganization of the departments.

The IUOE petitioned the CIR, alleging that Plattsmouth had violated § 48-824(1) by refusing to bargain in good faith over the effects of the elimination of the Parks Department. The IUOE sought reinstatement for Winters with backpay and asked that

Plattsmouth be ordered to engage in good faith collective bargaining with the IUOE concerning the layoff of bargaining unit employees. Plattsmouth admitted that it had eliminated the Parks Department and created the Street and Property Management Department. It also admitted that one full-time bargaining unit employee had been laid off. Plattsmouth alleged, however, that the IUOE had waived its right to bargain.

The CIR found that as a result of the reorganization of its departments, Plattsmouth had unilaterally decided to lay off a member of the recently organized bargaining unit. The CIR determined that no bargaining had occurred over the impact of this reorganization upon the membership of the bargaining unit. It also found that the evidence did not support a waiver of the IUOE's right to bargain and that Plattsmouth's failure to bargain over the effects of the reorganization was a prohibited practice as defined by § 48-824(1).

Relying upon various decisions of the National Labor Relations Board (NLRB) for guidance, the CIR ordered Plattsmouth to make Winters whole by compensating him with backpay until one of several conditions, including reinstatement, was met. It further ordered Plattsmouth to cease and desist from unilaterally implementing changes in terms and conditions of employment which were mandatory subjects of bargaining. It also ordered the parties to commence good faith negotiations over the changes. Plattsmouth timely appealed.

## ASSIGNMENTS OF ERROR

Plattsmouth assigns, restated, that the CIR erred (1) in ordering it to reinstate Winters and (2) in ordering it to pay Winters backpay in a manner consistent with an award issued by the NLRB pursuant to the National Labor Relations Act (NLRA), 29 U.S.C. § 151 et seq. (2000).

## ANALYSIS

The issue presented is whether the CIR acted in excess of its powers when it ordered that Winters be reinstated with backpay in order to remedy the prohibited practice in violation of § 48-824(1). Plattsmouth does not challenge the CIR's determination that it engaged in a prohibited practice.

Our scope of review provides that any order or decision of the CIR may be modified, reversed, or set aside by an appellate court on one or more of the following grounds and no other: if the commission acts without or in excess of its powers, if the order was procured by fraud or is contrary to law, if the facts found by the commission do not support the order, and if the order is not supported by a preponderance of the competent evidence on the record considered as a whole. *Crete Ed. Assn. v. Saline Cty. Sch. Dist. No. 76-0002, ante* p. 8, 654 N.W.2d 166 (2002). Statutory interpretation presents a question of law, in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of the decision made by the court below. *Keller v. Tavarone, ante* p. 236, 655 N.W.2d 899 (2003).

Based upon our scope of review, we must determine whether the CIR acted without or in excess of its powers. See *Crete Ed. Assn. v. Saline Cty. Sch. Dist. No. 76-0002, supra.* In order to make such determination, we are required to examine the provisions of the IRA independently of the determination made by the court below. See *Keller v. Tavarone, supra.*

Plattsmouth contends that the CIR's statutory authority cannot be expanded beyond that which is provided by the Legislature. It claims that the CIR's reliance upon various decisions of the NLRB was misplaced because the CIR does not have the same statutory powers as the NLRB.

The IUOE refers this court to various NLRB decisions which have held that where there has been a failure to bargain prior to a layoff, the appropriate remedy under the NLRB is reinstatement of the affected employees with backpay until the employer has fulfilled its bargaining obligation. The IUOE argues that we must look to the decisions of the NLRB for guidance in resolving this issue because the IRA and the NLRA have similar provisions.

We have previously held that decisions of the NLRB provide guidance and are helpful to the CIR in resolving issues where there are similar provisions. See *Nebraska Pub. Emp. v. Otoe Cty.,* 257 Neb. 50, 595 N.W.2d 237 (1999). The CIR obtains its power and authority from state law, whereas the NLRB obtains its power and authority from the NLRA. The IUOE argues that the federal counterpart to § 48-824(1) is 29 U.S.C. § 158(a), which provides:

"It shall be an unfair labor practice for an employer . . . (5) to refuse to bargain collectively with the representatives of his employees . . . ."

Although the NLRA and the IRA contain similar provisions, the NLRA specifically provides that reinstatement with or without backpay is a remedy for an unfair labor practice. See 29 U.S.C. § 160(c). The IRA does not specifically provide for such a remedy. Therefore, the decisions of the NLRB are not helpful to our analysis on this issue.

Plattsmouth also argues that the present action is not an "industrial dispute" because it involves only one employee and that, therefore, the CIR had no authority to enter an order of reinstatement with backpay. Brief for appellant at 28. Plattsmouth relies upon *Nebraska Dept. of Roads Employees Assn. v. Department of Roads*, 189 Neb. 754, 205 N.W.2d 110 (1973), in which we held that a uniquely personal termination of employment did not constitute an industrial dispute within the purview of the IRA. However, *Nebraska Dept. of Roads Employees Assn.* does not control our decision.

Neb. Rev. Stat. § 48-810 (Reissue 1998) gives the CIR jurisdiction over "industrial disputes" and "other disputes as the Legislature may provide." An industrial dispute is defined as "any controversy concerning terms, tenure, or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, or refusal to discuss terms or conditions of employment." Neb. Rev. Stat. § 48-801(7) (Reissue 1998). In its petition, the IUOE alleged that Plattsmouth had violated § 48-824(1) by failing to negotiate in good faith with respect to a mandatory topic of bargaining. Thus, the matter at issue was an industrial dispute as defined in § 48-801(7). Furthermore, Neb. Rev. Stat. § 48-825 (Reissue 1998) allows a party alleging a violation of § 48-824 to bring a complaint in the CIR and gives the CIR authority to order an appropriate remedy for such violation. We therefore conclude that the CIR had jurisdiction to hear this complaint and to order a proper remedy.

Plattsmouth next argues that the CIR has only those powers specifically set forth in the IRA. It argues that unlike the powers and authority provided to the Nebraska Equal Opportunity

Commission by the Nebraska Fair Employment Practice Act, Neb. Rev. Stat. § 48-1101 et seq. (Reissue 1998), the powers and authority provided to the CIR by Neb. Rev. Stat. § 48-809 (Reissue 1998) do not include the power or authority to enter an order for reinstatement with backpay. Plattsmouth also contends that the CIR has no authority to award damages.

In response, the IUOE refers this court to *IAFF Local 831 v. City of No. Platte*, 215 Neb. 89, 337 N.W.2d 716 (1983), in which we recognized a general grant of authority to the CIR to fashion necessary and appropriate remedies. In *IAFF Local 831*, we held that the CIR had authority to award interest on wages when it had ordered a wage rate as part of an industrial dispute over an appropriate wage to be paid to the employees. Although there was no specific language in the IRA granting the CIR authority to order payment of interest, we nevertheless affirmed the award of interest.

The IUOE asserts that the CIR has authority pursuant to § 48-825 and Neb. Rev. Stat. §§ 48-819.01 and 48-823 (Reissue 1998) to fashion an appropriate and necessary remedy to rectify the unfair and prohibited labor practices of Plattsmouth.

In reading a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense. *First Data Corp. v. State*, 263 Neb. 344, 639 N.W.2d 898 (2002). Neb. Rev. Stat. § 48-816(1) (Reissue 1998) provides in part:

> In the event of an industrial dispute between an employer and an employee or a labor organization when such employer and employee or labor organization have failed or refused to bargain in good faith concerning the matters in dispute, the commission may order such bargaining to begin or resume, as the case may be, and may make any such order or orders as may be appropriate to govern the situation pending such bargaining.

The IRA also provides that upon a finding by the CIR that a party has committed a prohibited practice in violation of § 48-824, § 48-825(2) authorizes the CIR to order an appropriate remedy. See *Crete Ed. Assn. v. Saline Cty. Sch. Dist. No. 76-0002*, ante p. 8, 654 N.W.2d 166 (2002). Section 48-825(2) provides:

The commission shall file its findings of fact and conclusions of law. If the commission finds that the party accused has committed a prohibited practice, the commission, within thirty days after its decision, shall order an appropriate remedy. Any party may petition the district court for injunctive relief pursuant to the rules of civil procedure.

Section 48-819.01 provides:

Whenever it is alleged that a party to an industrial dispute has engaged in an act which is in violation of any of the provisions of the Industrial Relations Act, or which interferes with, restrains, or coerces employees in the exercise of the rights provided in such act, the commission shall have the power and authority to make such findings and to enter such temporary or permanent orders as the commission may find necessary to provide adequate remedies to the injured party or parties, to effectuate the public policy enunciated in section 48-802, and to resolve the dispute.

Furthermore, § 48-823 provides:

The Industrial Relations Act and all grants of power, authority, and jurisdiction made in such act to the commission shall be liberally construed to effectuate the public policy enunciated in section 48-802. All incidental powers necessary to carry into effect the Industrial Relations Act are hereby granted to and conferred upon the commission.

It is apparent from a review of the language of the IRA that the Legislature has provided the CIR with general authority to order an appropriate remedy.

From the above pronouncements of legislative authority, we must determine how much power and authority the Legislature intended to grant the CIR in order to provide an appropriate remedy to an injured party or parties.

Plattsmouth argues that the CIR's order of reinstatement with backpay was not an appropriate remedy and therefore exceeded the authority given to the CIR by law. It contends that §§ 48-819.01 and 48-825 grant the CIR authority to order an appropriate remedy only as it relates to the issue of bargaining but not to the award of damages. Plattsmouth also claims that Winters was not a party to the action and that, therefore, the CIR had no authority to award damages to him.

In *IAFF Local 831 v. City of No. Platte*, 215 Neb. 89, 337 N.W.2d 716 (1983), we pointed out that § 48-819.01 was enacted as a result of our decision in *University Police Officers Union v. University of Nebraska*, 203 Neb. 4, 277 N.W.2d 529 (1979) (superseded by statute as stated in *IAFF Local 831 v. City of No. Platte, supra*). In *University Police Officers Union*, we held that the CIR had no authority "to make findings with regard to unfair labor practices or direct a public employer to take any more action than is necessary to preserve and protect the status of the parties' property and public interest involved pending final determination of the issues." 203 Neb. at 17-18, 277 N.W.2d at 537. We recognized the authority granted to the CIR by § 48-819.01 to enter such orders as it may find necessary to provide adequate remedies to effectuate the public policy and to resolve the dispute.

In *Transport Workers v. Transit Auth. of Omaha*, 216 Neb. 455, 344 N.W.2d 459 (1984), the issue was whether the CIR had authority to enter temporary orders concerning wages, hours, and terms and conditions of employment while the CIR was attempting to resolve a labor dispute pending before it. The trial court had concluded that the CIR's authority was limited to restraining the employer from firing the employee. We reversed, and concluded that if the CIR had authority to make temporary orders to protect the status of the parties, it obviously must have had authority to do something more than simply make sure that the employer did not fire the employee. We held that the IRA granted the CIR "discretionary authority, when it appears appropriate, to order that the status quo of the parties be retained until the dispute is resolved." *Id.* at 461, 344 N.W.2d at 463. We stated:

> It may very well be that it is in the public interest to be assured that public employees, who do not have the right to strike or hinder, delay, limit, or suspend the continuity or efficiency of governmental services, should continue to receive their previous salaries or be afforded the same terms and conditions of employment while the employer, the employee, and the CIR attempt to resolve the differences.

*Id.* at 458-59, 344 N.W.2d at 462.

In *Transport Workers*, we noted that the authority of the CIR is limited to that granted by the Legislature and must be narrowly construed. However, the Legislature has stated in § 48-823 that all

grants of power, authority, and jurisdiction shall be liberally construed to effectuate the public policy.

The rationale in limiting the power and authority granted to the CIR is that the CIR is an administrative body and is not a court. Therefore, the exercise of power is based upon what is necessary to provide adequate remedies to effectuate the public policy and resolve the dispute. It is simply a question of how much authority an administrative body will be permitted to exercise in performing its quasi-judicial functions. The Legislature has left this for the courts to determine on a case-by-case basis.

■ In *Crete Ed. Assn. v. Saline Cty. Sch. Dist. No. 76-0002, ante* p. 8, 30, 654 N.W.2d 166, 183 (2002), we stated that when the CIR finds that a party has violated the IRA, "§§ 48-819.01 and 48-825(2) grant the CIR authority to issue such orders as it may find necessary to provide adequate remedies to the parties to effectuate the public policy enunciated in § 48-802." In *Crete Ed. Assn.*, the remedies fashioned by the CIR fell into two categories: (1) that the appellant cease and desist from certain actions and (2) that the appellant post notices informing employees that it had engaged in prohibited labor practices. We addressed the authority of the CIR under §§ 48-819.01 and 48-825, within the framework of identifying adequate and appropriate remedies. We concluded that the cease and desist orders issued by the CIR were adequate and appropriate but that the order requiring the posting of notices was not a proper remedy and therefore exceeded the CIR's powers.

In the case at bar, the CIR's order to cease and desist unilaterally implementing changes in the terms and conditions of employment is not at issue. We focus only on whether the order of reinstatement with backpay was an adequate and appropriate remedy and therefore within the authority of the CIR.

If the CIR finds that an accused party has committed a prohibited practice, it has the authority to order an appropriate remedy, see § 48-825(2), and such authority is to be liberally construed to effectuate the public policy enunciated in Neb. Rev. Stat. § 48-802 (Reissue 1998), see § 48-823. Since the Legislature has chosen not to specifically define the extent of the remedial authority granted to the CIR, the scope of such authority will be defined by the courts on a case-by-case basis.

Plattsmouth's failure to bargain over a mandatory subject of bargaining was a prohibited practice, and thus, the CIR had the authority to craft an appropriate remedy for the injured party. Although Winters was not named as a party, the IUOE properly represented him as his recognized collective bargaining representative. Therefore, he was an injured party for purposes of the IRA.

■ We have previously determined that the CIR has authority to enter orders preserving the status quo until a dispute is resolved. See *Transport Workers v. Transit Auth. of Omaha*, 216 Neb. 455, 344 N.W.2d 459 (1984). Giving a liberal interpretation to the authority to effectuate the public policy of § 48-802, we determine that it was appropriate for the CIR to order the parties to return to the status quo following a finding of a prohibited practice under the IRA. Therefore, we conclude that the CIR had authority to order that Winters be reinstated to the position he held prior to Plattsmouth's prohibited actions and that the CIR did not act in excess of its powers when it ordered such reinstatement with backpay.

## CONCLUSION

The CIR was correct in returning Winters to the status quo by ordering reinstatement and the payment of his normal wages from the date he was laid off less any net interim earnings. Such was an appropriate remedy under the facts of this case.

For the reasons set forth herein, we affirm the order of the CIR.

AFFIRMED.